Brown *v.* Perkins & wife.

JAMES BROWN *vs.* STEPHEN PERKINS & wife.

In an action for breaking and entering a shop and destroying articles therein, if the plaintiff, while testifying in his own behalf, has volunteered the statement that no liquors were in the shop at the time, it is competent for the defendant to introduce evidence in reply that liquors were found in the shop at the time of the alleged trespass, although the plaintiff disclaims seeking damages for their destruction.

Any person who is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks or signs, or who in any way or by any means countenances and approves the same, is in law deemed to be an aider and abettor, and liable as principal; and proof that a person is present at the commission of a trespass without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance, and approved it, and was thereby aiding and abetting the same.

An entry into the building of another without license express or implied is a trespass, and entitles the owner to nominal damages.

TORT for breaking and entering the plaintiff's grocery shop, and destroying various articles of trade and consumption. The

8*

defendants denied that they did any of the acts charged, and
also specially set forth that, in case it should be claimed that
they were constructively present upon an occasion when certain
alleged trespasses were committed, they would deny that the
acts in question were trespasses, because the plaintiff's building
was used for the illegal sale and keeping of intoxicating liquors,
and was a common nuisance, which certain other parties assem-
bled together and abated, as they lawfully might do ; and the
defendants admitted that they were in the vicinity of those con-
cerned in this act, but denied that they themselves were guilty
of any act which could be construed to be a violation of the
law, even though the justification set up in favor of the other
parties should fail.

On exceptions heretofore taken in this case a new trial was
granted, and the case remitted to the superior court.   At the
second trial the plaintiff was called as a witness, and gave his
testimony tending to show, that on the 8th of July 1856 he was
in possession of and occupied a close at Rockport on which his
shop was situated; that he was in the grocery, old junk and
iron business; that on said 8th of July a large crowd of men
and women, principally women, came to the shop adjoining his
own shop, and entered it and destroyed a demijohn of alcohol;
that the crowd then broke into his own shop, and destroyed
various articles of personal property, and broke and injured his
shop; that the defendants were among the crowd which entered
his shop ; and that he saw the defendants coming out of his
shop with the crowd which had destroyed his property.   The
plaintiff further testified that for eight or ten days before the
said 8th of July he had been sick and absent from his shop ; that
on the 4th of July another person had obtained from him the
privilege of occupying the shop for the day, and of selling vari-
ous articles, but no liquors.   And the plaintiff volunteered the
statement, no question being asked upon the subject-matter by
counsel, that no liquors were in the shop on said 8th of July,
and that no liquors had been there, to his knowledge, for a long
time before.

The defendants asked a witness called by them, and who

was in the shop during the alleged trespass, if any liquors were found there. The plaintiff objected to the inquiry, and stated that if any liquors were in the shop, which he denied, he did not ask for any damages for their destruction; but *Rockwell*, J. allowed the question to be put, and the witness testified that they found one demijohn half filled with brandy, which demijohn was carried out and broken, and the brandy spilled upon the ground.

There was other evidence tending to show that on said 8th of July there was a large number of women assembled in the public square of Rockport; that they proceeded with a banner and fifty or sixty hatchets by the defendants' dwelling-house towards the plaintiff's shop and Lane's bowling saloon, which were situated on the same street thirty feet apart; that the defendants' dwelling-house was about three hundred feet from the plaintiff's shop; and that when the women passed the defendants' dwelling-house on their way to the plaintiff's shop and Lane's saloon, the defendants came out of their house and followed them; that the women entered Lane's saloon, searched and ransacked the place and destroyed some liquors; that both of the defendants entered Lane's saloon and remained there while the women remained; that the women then left Lane's saloon and broke open the plaintiff's shop by force, and filled his store full and destroyed various articles of property; that they then proceeded to the place of one Bickford, and thence to other places, and at each place acted in a similar manner in the destruction of property; and that the two defendants actively assisted in breaking open the door of the plaintiff's shop.

The defendants called a large number of witnesses who gave evidence tending to show that neither of the defendants was near the door of plaintiff's shop when it was broken open; that Mr. Perkins was on the opposite side of the street, thirty-five or forty feet from the door; and that Mrs. Perkins was in Lane's saloon; and that Mr. Perkins did not enter the plaintiff's shop that day. Mrs. Mary C. Hale, a witness called by the defendants, testified that when the plaintiff's door was broken open she was standing in the door of Lane's saloon; that Mrs. Per-

kins was in Lane's saloon, standing about ten feet from the wit-
ness and talking with the plaintiff; that the witness and Mrs.
Perkins immediately entered the plaintiff's shop with the crowd;
that Mrs. Perkins went with the crowd to all the places which
they went to through the day; and that Mrs. Perkins acted as
the rest did in the destruction of property in all the places
named, including Lane's and Brown's; but that she did not
personally do any acts of trespass at Lane's or Brown's.

The defendant, Mrs. Perkins, was called as a witness, and
testified that she was in Lane's saloon, talking with the plain-
tiff, when there was a report that the plaintiff's shop was broken
open; that she immediately went into it, the door having been
broken open; that she did nothing therein, and that she was one
of the last that left it. On cross-examination, she said it was
true that she went round with the women into most of the
places named, and acted as the rest of them did in destroying
property; that she approved of what the wives and mothers
were doing, and expressed her approval to one woman.

The defendant, Stephen Perkins, was called as a witness, and
testified that he was on the opposite side of the street when
the plaintiff's door was broken open; that he did nothing to
encourage or discourage what was going on; that in his mind
he approved of what they were doing; he thought they were
doing right, and thinks so now; that he did not approve of
what they did at Lane's, but that he did approve of what they
did at the plaintiff's shop in destroying the liquor. He further
testified that he knew that his wife was going round with the
crowd and going into the places named, against the will of the
owners; that if the plaintiff had made any attack upon or re-
sistance to her, he intended to get her away and to take care
of her, but that nobody made any resistance, and he did nothing
to get her away.

Upon this case the plaintiff's counsel asked for the following,
amongst other instructions, to the jury:

" Fourthly. That persons are regarded in law as present aid-
ing and assisting in the execution of a trespass who are so near
that, in case of resistance or opposition to the acts which are

done or prepared to be done, they could aid and defend those who are actually doing them, or prevent and keep away those who might come to the assistance of the party against whom or whose interest the act to be done would operate injuriously; all those present, who countenance and approve the measures which are taken, or make no opposition or manifest no disapprobation of them; *and this is more emphatically true*, if those present and approving stand in such a relation as would naturally enable them to exercise any authority, control or influence over the actors, as when the actors are wives or children, especially daughters, and the persons present are husbands or fathers of such actors. Such presence with such views does in its nature afford encouragement and inducement to the actors, and perhaps without it the acts would not have been done; so if the persons thus present are magistrates, ministers, and teachers of morality or conservators of the peace, their presence would be still more encouraging and influential, and they would be equally responsible to the party injured, and, in case of a criminal prosecution, equally amenable to the law."

The presiding judge instructed the jury, in accordance with this request, with the exception of striking out the words " and this is more emphatically true," and he stated the proposition to the jury as follows :

" Fourthly. That persons are regarded in law as present aiding and assisting, who are so near that, in case of resistance or opposition to the acts which are done or prepared to be done, they could aid and defend those who are actually doing them, or prevent and keep away those who might come to the assistance of the party against whom or whose interests the act to be done would operate injuriously; all those present, who countenance and approve the measures which are taken, or make no opposition or manifest no disapprobation of them, if those present and approving stand in such a relation as would naturally enable them to exercise any authority, control or influence over the actors, as when the actors are wives or children, especially daughters, and the persons present are husbands or fathers of such actors. Such presence with such views does in

its nature afford encouragement and inducement to the actors, and perhaps without it the act would not have been done; so if the persons thus present are magistrates, ministers, and teachers of morality or conservators of the peace, their presence would be still more encouraging and influential, and they would be equally responsible to the party injured, and, in case of a criminal prosecution, equally amenable to the law."

The plaintiff's counsel also asked for the following instruction : " That the entry of Mrs. Perkins, wife of the defendant Stephen Perkins, into the shop of the plaintiff, under the circumstances under which she did enter, was *prima facie* a trespass, and that the defendants were jointly liable for all the damage which was done to the property of the plaintiff during the transactions in his shop ;" but the presiding judge declined so to rule, and instead thereof instructed the jury as follows :

" If the jury are satisfied that Mrs. Perkins went from Lane's saloon with the crowd to the plaintiff's shop when they broke and entered the shop, and was with them when the main trespasses were committed, the above instruction is substantially correct; but if they are not satisfied that she had done or incited others to do any act of trespass, at Lane's saloon; and are satisfied that she went from there some time after the plaintiff's shop had been entered, and after the main trespasses in said shop had been committed, and that in going into said shop, or while remaining therein, she did not do any act, or by word or deed manifest any approval of the acts of trespass there committed, but went in and came out of the open shop as an observer merely, her mere presence there was not sufficient to render the defendants liable, although she might have mentally approved of what was there done."

The jury returned a verdict for the defendants, and the plaintiff alleged exceptions.

*J. W. Perry & C. Sewall,* for the plaintiff. 1. All those present at a riot, assenting to the breach of the peace and approving of the acts done, are equally liable, although they take no active part in the injury done to property. Wharton Amer. Cr. L. (3d ed.) 826, 827, 828. 1 Russell Cr. 271. 1 Bish. Cr. L. §§ 264, 464.

2. There is no distinction between those who go to do an unlaw-
ful act and those who go to see it done. *Pennsylvania* v. *Craig*,
Addison, 190. *Rex* v. *Erskine*, 4 C. & P. 537. *Rex* v. *Billing-
ham*, 2 C. & P. 233. *Rex* v. *Murphy*, 6 C. & P. 103. *Bedford* v.
*Birley*, 3 Stark. R. 106. *Rex* v. *Fursey*, 6 C. & P. 88. *King* v
*Hunt*, 1 Kenyon, 108. *State* v. *Straw*, 33 Maine, 554. 3. In
contemplation of law, the presence of the defendants at the riot,
approving and not discountenancing it, was an overt act of
encouragement and assistance, no matter whether they stood in
any relation of authority over the actors or not. 4. A person is
liable in damages for a trespass if present assenting to the act
done, without any overt act on his part. *Williams* v. *Sheldon*,
10 Wend. 657. *Bishop* v. *Ely*, 9 Johns. 294. *Davey* v. *Cham-
berlain*, 4 Esp. R. 229. 5. Every entry upon the premises of
another without the consent of the owner is *prima facie* a tres-
pass. *Guille* v. *Swan*, 19 Johns. 381. *Wells* v. *Howell*, *Ib.* 385.
6. The entry of Mrs. Perkins into the plaintiff's shop, under the
circumstances testified to by herself, was a trespass.

*E. H. Derby & R. S. Rantoul*, for the defendants. 1. The de-
fendants had a right to ask if liquor was in the plaintiff's shop,
as part of the *res gestæ*, and as contradicting the plaintiff.
*Prince* v. *Shepard*, 9 Pick. 183. 2. No exception lies to the
omission of the judge to give the instruction requested in the
precise words of the plaintiff's counsel, or to the omission of the
words " and this is more emphatically true." The instruction
as given covered the ground, the defendants being husband and
wife, and was sufficiently favorable to the plaintiff. The court
was not bound to generalize or to go out of the case and state
principles of law applicable to strangers. It was sufficient to
state the law as it applied to the relative positions and relations
of the husband and wife, who were defendants. 3. The entry
of the defendant Rachel Perkins into the plaintiff's shop was not
*prima facie* a trespass. A mere visit to an inn or to an open
grocery, as this shop is called by the plaintiff in describing his
business, is not a breach of the close, or even a trespass, and
does not make the defendants responsible for the acts of stran-
gers who had previously broken the close. 4. No evidence of

acts done by persons not parties to the record can affect the defendants until they are shown to have been conspirators with such persons. To make the defendants liable for acts of others, the acts must be shown to have been done in pursuance of a common design. 5. Persons present at a riot and doing nothing, especially if not ordered to depart, are not held liable. Rep. of Com. on Penal Code of Mass. Riots, p. 5.

BIGELOW, C. J. 1. The inquiry put to the witness called by the defendants concerning the liquors found in the shop at the time of the alleged trespass, was competent. It was too late for the plaintiff to object to the question after he had voluntarily testified on the same subject; nor were the defendants bound to take his disclaimer of damages on account of the destruction of liquor after he had put the fact in evidence as part of his case. Besides, the inquiry related to a fact, which constituted a part of the *res gestæ*, on which the plaintiff relied to support his action, and the defendants had a right to insist that it should be laid before the jury. The plaintiff could not select such facts as he desired to prove, and exclude others which were connected with the same transaction.

2. The evidence at the trial tended to show, that, by a concerted action or conspiracy, many persons assembled together with a design to commit unlawful acts by trespassing on the premises and destroying the property of others whom they supposed to be engaged in an unlawful and obnoxious traffic; and that, in pursuance of this common design, they broke and entered the shop of the plaintiff, and there injured and destroyed various articles of personal property. It also appeared that both the defendants were present during the perpetration of these unlawful acts on the premises of the plaintiff; and there was evidence which tended to prove that both of them, if they did not actively participate in the commission of the unlawful acts, were nevertheless there in pursuance of the common design, and wer sympathizing with and giving countenance to those who were engaged in the work of destroying the plaintiff's property. Upon this point, however, the evidence was contradictory; the defendants contending that they were there as spectators only

innocent of any combination or conspiracy, and in no way participating in or encouraging the unlawful acts of others. This was the great contention between the parties at the trial. In this posture of the case, it was essential to a fair and impartial trial and to the due protection of the rights of the plaintiff, that a precise and accurate instruction should be given to the jury, prescribing the rule of law by which a party who is present at the commission of a trespass, but not actively participating therein, may be held liable as a trespasser for aiding and abetting the unlawful act. In this particular the rulings at the trial were not sufficiently explicit. By omitting to give the instruction asked for by the plaintiff in his fourth prayer, and substituting in its stead another ruling, we think the court left the case to the jury without a clear, intelligible, and exact statement of the rule of law adapted to the facts in proof and necessary to guide them in making a proper application of the testimony. The effect of the instruction given to the jury was to lead them to believe that the defendants could not be held liable as principals for aiding and assisting in the unlawful acts by countenancing and approving the measures which were taken, or by making no opposition or manifesting no disapprobation of them, unless they stood in such relation as would naturally enable them to exercise some authority, control or influence over the actors; as where the actors are wives or children, especially daughters, and the persons present are husbands or fathers of such actors. This was clearly erroneous; not only because it annexed a limitation or qualification to the rule by which aiders and abettors are held to be principals, which does not exist, but also because it omitted to meet that part of the evidence which tended to show that both the defendants were present, giving aid and assistance to the actors in the unlawful enterprise, towards whom they stood in no such relation as is contemplated in the instructions. We do not however, mean to say that we give our sanction to the fourth instruction asked for by the plaintiff as containing a just and correct statement of the law. The first clause is too broad and sweeping in its definition of what legally constitutes an aiding

and abetting of an unlawful act. It is not accurate to say that all those present at the commission of a trespass are liable as principals who make no opposition or manifest no disapprobation of the wrongful invasion of another's person or property. The true rule on that point is this : any person who is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks, or signs, or who in any way or by any means countenances or approves the same, is in law deemed to be an aider and abettor, and liable as principal ; and proof that a person is present at the commission of a trespass without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same. 3 Greenl. Ev. § 41. Foster, 350. 1 Hale P. C. 438. On the other hand, it is to be borne in mind that mere presence at the commission of a trespass or other wrongful act does not render a person liable as a participator therein. If he is only a spectator, innocent of any unlawful intent, and does no act to countenance or approve those who are actors, he is not to be held liable on the ground that he happened to be a looker-on and did not use active endeavors to prevent the commission of the unlawful acts. 1 Hale P. C. 439. Roscoe Crim. Ev. (2d ed.) 201.

3. Upon another point, also, we are of opinion that the in structions were deficient in substantial accuracy. There was evidence in the case which tended to prove that the shop of the plaintiff at the time of the alleged trespass was locked, and that it had not been opened for several days prior thereto on account of the plaintiff's sickness. If this was so, the mere entry into the premises of the plaintiff was clearly without license either express or implied. It would have been otherwise if the shop had been opened. In this aspect of the evidence, the jury should have been told that if they found there was no license, either express or implied, to enter the plaintiff's shop, the defendants were liable for nominal damages for the entry of the female defendant as a breach of the plaintiff's close, although they would not be liable for further damages after such entry

unless she aided and abetted the unlawful acts perpetrated therein; and if she did so aid and abet, they would be liable only for such damages as were done subsequent to such entry and while she so aided and abetted. This instruction was necessary in case the jury should find there was no proof of any aid or assistance given to the actors in the original trespass by the female defendant prior to her first entry into the plaintiff's premises. If they did so find, then it was essential that the legal effect of her actual entry on the plaintiff's premises, if made without license, should have been fully explained to them.

*Exceptions sustained.*