STATE OF IOWA v. THOMAS YOUNG, Appellant.

Criminal law: MURDER: INSTRUCTION. Merely consenting to the com-
1 mission of an offense is not under all circumstances punishable as a crime; but where defendant admitted that he struck deceased at the time and place in question, the instruction that if defendant, alone, or with his co-defendant, or either of them, the other being present, aiding, abetting or consenting thereto, did kill the deceased, defendant would be guilty, was not erroneous as advising the jury that defendant might be convicted if standing idly by and took no part in the affray.

Same: WITHDRAWAL FROM AN AFFRAY: INSTRUCTION. Where one in
2 good faith withdraws from a combat he ceases to be a wrong-doer, if his adversary has reasonable ground to believe that he has so withdrawn, even though such withdrawal is not clearly evinced. But where it appeared that the defendant was an aggressor at all times during the affray, and never at anytime indicated his withdrawal, or that he intended to withdraw, he was not prejudiced by an instruction to the effect that his withdrawal from the combat must be clearly signified.

Instructions: REFUSAL OF REQUESTS. Refusal of a requested instruc-
tion fully covered by those given by the court is not reversible
error.

Criminal law: VERDICT: REVERSAL. Where the jury and court who
saw and heard all the witnesses believed those for the state, the
verdict will not be set aside because of the character of the state's
witnesses.

*Appeal from Decatur District Court.*—HON. T. L. MAXWELL,
Judge.

TUESDAY, DECEMBER 10, 1912.

DEFENDANT was convicted of manslaughter, and appeals.
—*Affirmed.*

*C. W. Hoffman* and *Marion Woodard,* for appellant.

*Geo. Cosson,* Attorney General, and *John Fletcher,* As-
sistant Attorney General, for the State.

SHERWIN, J.—The defendant, Thomas Young, was jointly
indicted with Clarence Teale and others for the murder of
Mrs. Bertha Zornes on the 7th day of December, 1910. A
separate trial was had at his request, and he was convicted
of manslaughter. Clarence Teale had already been tried on
the same indictment and found guilty, and on his appeal the
judgment against him was affirmed. The case is reported in
154 Iowa, 677, and from the opinion in that case we quote the
general statement as to the facts immediately preceding the
death of Mrs. Zornes:

Mrs. Zornes, with her husband, Levi Zornes, and their
children lived on a farm adjoining the farm upon which
this defendant lived, and Levi Zornes rented of this defend-
ant two or three acres of his land. In the evening of the
7th of December, the deceased, with her husband and three
sons, Henry, eighteen years of age, Willie, thirteen years

old, and Elzie, twelve years old, were at the family home on the farm. A daughter, eleven years of age, was at the time away from home. The Zornes had for supper that evening Thomas and Henry Phillips, their nephews, and both grown men, and Roy Young, a man twenty-nine years old, who is a brother of Thomas and Ed Young, who, with one Hugh Teale, were jointly indicted with this defendant, Clarence Teale, for this murder. The Zornes family and their supper guests remained at the house during the evening, and about 9 o'clock, or a little thereafter, this defendant, Clarence Teale, his brother, Hugh Teale, a man twenty-two years old, and Thomas and Ed Young, adults, called at the Zornes home and were admitted to the house, and they, with the other guests and the family, except Mrs. Zornes, were in the same room; it being a southeast room of the house, with an outside door opening therefrom on the east, and a door in the southwest corner thereof opening into the southwest room of the house, which room had an outside door opening to the south. A room directly north of the living room, where these people were, was occupied as a bedroom, and when this defendant and his friends arrived at the house Mrs. Zornes was lying on one of the beds therein; but the door between the two rooms was open. The door between the two south rooms was in the southwest corner of the east room, and it was hung so that it swung to the east and south. At the time in question a shotgun belonging to one of the Zornes boys stood behind this door, which was then open. Shortly after the Teales and Thomas and Ed Young entered the house, a controversy arose between this defendant and Mrs. Zornes as to who was the author of a report current in the neighborhood that a young woman had been cooking for the defendant; he accusing Mrs. Zornes of being its author, and she denying it. Intemperate language was applied to each other, which finally resulted in a request from both Mr. and Mrs. Zornes that the defendant and his party leave the house. Up to this point there is no substantial difference between the witnesses as to what took place in the house, but beyond this there is a marked conflict in the testimony. The witnesses for the state say that when Mr. Zornes requested them to leave, Thomas Young (the defendant in this case) said that Zornes could not put him out, and immediately struck Zornes on the head with a heavy bicycle pump and

knocked him down; that Young knocked Zornes down in the same way a second time, and then threw the pump at Mrs. Zornes, striking her in the face and knocking her down. On the other hand, defendant's witnesses claim that Mrs. Zornes told her husband to get the shotgun and shoot the offending persons, and that while he was attempting to do so Thomas Young knocked Zornes down with the bicycle pump; that Mrs. Zornes then assumed a threatening attitude toward Thomas Young; and that he then knocked her down with the pump. But the question as to who was the physical aggressor in the house is not of controlling importance in this case. For present purposes it is enough to say that after being knocked down twice Mr. Zornes, together with Henry Zornes and the Phillips men, were driven from the house through the southwest room, and that the conflict was renewed on the outside with Zornes and his son Henry. Mrs. Zornes and the two younger boys remained in the house until the others had gone outside; whereupon she, with these two boys, left the house by the east door, and started in a northwesterly direction therefrom.

The record on this present appeal further shows that the defendant, Thomas Young, followed the Zornes men out of the house, and was actually engaged in a conflict with them on the outside. According to his own testimony, while he was defending himself against the attacks of some of the men, he struck Mrs. Zornes on the head with a club. He claims, however, that Mrs. Zornes assaulted him in the dark outside of the house, and that when he struck her he did not know who it was that he struck. The evidence on the part of the state tends to show that Mrs. Zornes was, in fact, struck and killed by Clarence Teale, and that this defendant, Thomas Young, aided and abetted said Teale.

In the thirteenth and eighteenth instructions the court said: "If you find . . . that . . . the defendant, Tom Young, alone, or that the defendant, Tom

1. CRIMINAL LAW: murder: instruction. Young, and his codefendant, Clarence Teale, or either of them, the other present aiding, abetting, or consenting thereto, did unlawfully kill Bertha

Zornes"—defendant would be guilty. Complaint is made of the use in these instructions of the words "consenting thereto," on the ground that the jury was told, in effect, that defendant might be convicted, if he was standing idly by and took no part in the trouble. Merely consenting to the commission of a crime would not, under all circumstances, be punishable as a crime, no matter how great the moral turpitude involved. But there was no error in the instruction here, because the defendant admitted that he was the one who struck the deceased at the time and place in question.

The twenty-third instruction was as follows: "If, however, you find from the evidence that the defendant, Tom Young, went to the home of Bertha Zornes on the night of December 7, 1910, with a view to provoke a quarrel or bring on an affray or difficulty with her, or that after going to the home of the said Bertha Zornes at said time the defendant, Tom Young, without provocation or legal excuse, provoked or brought on an affray by assaulting the said Bertha Zornes or members of her family, and you further find that thereafter the defendant, Tom Young, in good faith withdrew from such affray or difficulty, and clearly signified to the said Bertha Zornes that he had so withdrawn and abandoned further combat, then thereafter his legal right of self-defense would be restored to him, and he might exercise the same under the rules given elsewhere in these instructions." Appellant says that he was not required to "clearly signify" to Bertha Zornes that he had, in good faith, withdrawn from the conflict, and that the instruction was therefore erroneous. In *State v. Dillon*, 74 Iowa, 653, this court disapproved a similar instruction and held that, where a defendant actually and in good faith withdrew from the combat, he ceases to be a wrongdoer, if his adversary has reasonable ground for believing that he has so withdrawn, even though such withdrawal is not clearly evinced. But this defendant was not prejudiced by the instruction complained of, because a care-

2. SAME: withdrawal from an affray; instruction.

ful examination of the record before us shows that this defendant, at all times during this difficulty, was an aggressor, and, so far as the record shows, never at any time indicated even to Bertha Zornes that he had done so, or that he intended to withdraw, from the combat. There is clearly no merit in appellant's contention that the instruction under consideration assumed that defendant, Thomas Young, made the assault in the house, and was not acting in self-defense.

Complaint is made because the court refused to give an offered instruction touching the weight to be given the evidence of certain witnesses whom the defendant had attempted to impeach. There was no error in the refusal to give this instruction, for the reason that the court with sufficient fullness covered the question in the instructions given.

3. INSTRUCTIONS:
refusal of re-
quests.

Appellant's contention that the evidence is insufficient to warrant this conviction cannot be sustained. There is much evidence supporting the state's case, and, unless we wholly disregard the testimony of many witnesses, the conviction must be upheld. The jury and the trial court saw and heard all of the witnesses, and we cannot, and should not, say in this case that the verdict is wrong because of the character of the state's witnesses. The judgment is therefore, *Affirmed.*

4. CRIMINAL LAW:
verdict: re-
versal.