State of Iowa, Appellee, v. Hugh Teale, Appellant.

**Criminal law:** MURDER: AIDING AND ABETTING: EVIDENCE. On this prosecution for murder the evidence is reviewed at length and held insufficient to warrant conviction on the theory that defendant was aiding and abetting in the killing of deceased, there being no claim or evidence of a previous conspiracy to commit the act.

**Same:** INSTRUCTION. The instruction in this case, prosecuted on the theory that defendant was aiding and abetting the crime, that if the jury find the defendant and his co-defendants, this defendant ''being present aiding, abetting and consenting thereto,'' did unlawfully kill the deceased, etc., the defendant would be guilty unless the killing was done in self defense, was an unsuitable form in which to submit the question, because tending to leave the impression that from his mere presence, which was conceded, he was in fact aiding and abetting.

**Same:** VERDICT: IMPEACHMENT. The affidavits of jurors as to how they understood the instruction cannot be used to impeach the verdict.

Deemer and Preston, JJ., dissenting.

Appeal from Decatur District Court.—Hon. H. K. Evans, Judge.

Tuesday, July 1, 1913.

The defendant was jointly indicted with four others for the murder of Bertha Zornes on December 7, 1910. The other defendants indicted were Clarence Teale, Thomas Young, Ed Young, and Roy Young. Prior to the trial of this defendant Clarence Teale, had been convicted under such indictment of murder in the second degree, and Thomas Young of man-

slaughter, and such convictions were affirmed here. Ed Young entered a plea of assault with intent to commit great bodily injury. The indictment against Roy Young was dismissed. The defendant herein was found guilty of manslaughter, and he appeals.—*Reversed* and *Remanded.*

*C. W. Hoffman* and *Marion Woodward,* for appellant.

*Hon. George Cosson,* Attorney General; *Ed. H. Sharp,* County Attorney; *John S. Parrish,* and *Miles & Steele,* for the State.

EVANS, J.—I. The defendant was convicted on the theory that he was present, aiding and abetting his codefendants, at the time of the killing of Mrs. Zornes. It is not claimed that he perpetrated any act which was directed against her, or which resulted in any injury to her in any other sense.

The Zornes family consisted of the husband and wife and three sons and a daughter. The husband is known in this record as Levi and the wife as Bertha and the three sons as Henry, Willie, and Elzie, aged respectively eighteen, sixteen and thirteen. The daughter Ora was absent, and does not figure in the case except by incidental reference. The family lived on a farm adjoining that of Clarence Teale, and occupied also a few acres of land rented from Clarence Teale. On the night of December 7, 1910, seven persons visited the Zornes home, including the indicted persons already named. Tom and Henry Phillips and Roy Young ate supper with the family. About 9 or 9:20 p. m. Clarence Teale, Tom Young, and Hugh Teale came. Twenty or thirty minutes later Ed Young came. Clarence Teale was a man between thirty-five and forty years of age. Hugh Teale was his younger brother, twenty-two years of age. Tom Young was twenty-five years of age, and was brother of Roy Young. Ed Young was a younger brother of Tom Young, and lived at home with his father. Tom Young and Hugh

1. CRIMINAL LAW: murder: aiding and abetting: evidence.

Teale had been engaged for some time prior to such evening in husking corn for Clarence Teale. It was not unusual for persons to gather at this home after night for reasons which were excluded from the evidence as immaterial. At the home this evening the men were all in the "southeast room" of the house. This room had a door exit at the east side, and another at its southwest corner opening into the "southwest room," which room had an outside door opening to the south. North of the southeast room was a bedroom. Mrs. Zornes was lying on one of the beds therein, the door between the two rooms being ajar. She was able thus to engage in conversation with the men in the other room. In the course of conversation an altercation of words arose between her and Clarence Teale. Thereupon her husband ordered the men out of the house. In the southwest corner of the room was a loaded shotgun. Levi Zornes, the husband, seized the shotgun. Tom Young knocked it out of his hands and knocked him down. A struggle ensued between Tom Young on the one hand and Levi and his son Henry on the other. Tom Young had a bicycle pump as a weapon. After using the bicycle pump first in his fight with Levi and Henry, he threw it at Mrs. Zornes,' who in the meantime had left her bed and had come into the room. Ed Young got possession of the gun, either taking it away from Levi or picking it up from the floor after it had been struck from his hand by Tom. Ed Young immediately removed the shells from the gun and carried it away to the "cave" for the purpose of hiding it from the Zornes. Within a few moments after the fighting had begun all the persons in the room rushed out of doors, some through the east door and some through the south. On the outside the fighting was resumed as between the Zornes and Tom Young and Clarence Teale. Mrs. Zornes received a blow on the head from a board or stick in the hands of Tom Young or Clarence Teale, which fractured her skull, and from which death resulted the same night. Tom Young admitted and testified that he struck the blow with the board, but contended that he did so in self-defense. As

already stated, he was found guilty of manslaughter. Levi and Henry Zornes and Tom Phillips testified that they saw Clarence Teale strike the blow, and he was found guilty of murder in the second degree. The question involved in this case is whether Hugh Teale was legally responsible to any degree for the death of Mrs. Zornes. We set forth herewith certain excerpts from the evidence for the state. If it can be said that the verdict is supported by sufficient evidence, such evidence must be found in the quoted excerpts.

Tom Phillips testified for the state as follows:

Tom threw the bicycle pump and hit Bertha Zornes. The shotgun was over behind the southwest door. I saw Tom Young leave this room; he followed Levi and Henry Zornes out. I went out after Tom Young; Ed Young and Roy Young went out. Clarence Teale, Mrs. Zornes, and the two boys and myself were in the room when Teale and I started out. I did not notice any blouse or vest on Teale. Clarence Teale came right out of the house behind me. When I got out Hugh Teale was standing there with some wood in one arm; a revolver or something in his hand shined bright. I wouldn't say whether it was a revolver or not. I went below the cave, and then west and then northeast. When I was at the northwest corner of the house I saw Clarence Teale and also saw Mrs. Zornes, Willie and Elza Zornes. I crossed the path in front of Mrs. Zornes and Elza. Clarence Teale had a board or a club, or something in his hand, after he left the side of the house. It was about three feet long. Mrs. Zornes was coming from the southeast when I first saw her. I saw Mrs. Zornes and the boys near the center of the house on the north side. Clarence Teale was on the west side of the house; he was at least twenty-five feet from them. Mrs. Zornes et al. was moving along. Clarence Teale was walking. Clarence Teale walked up behind Mrs. Zornes; she turned around and Clarence Teale knocked her down; she was sixty-three feet west from me as I estimated. The two Zornes boys—one of the boys was eighteen feet and the other fifteen feet west of me; that is my guess. Henry Zornes was forty feet from Levi. No one struck a lick in the house but Tom Young. Roy Young had a poker drawed up in

both hands. I never swore at the March term of court, or the November term of court, that Roy Young had a poker down at his side and never raised it. I may have swore that when I stepped out of the door that neither Tom Young or Hugh Teale threw any clubs. I don't believe that I said Hugh Teale threw any clubs. I never saw Hugh Teale throw any clubs. Clarence Teale and I went out practically together. Mrs. Zornes and the boys were in the southeast room when we went into the kitchen. I made a pretty good run out northeast of the house. I was running when I passed the cave. I was running pretty rapidly. When I stepped out of the door Hugh Teale was standing with a load of wood in one arm, and something bright in the other hand. I swore on the trial before in the case of the state of Iowa against Clarence Teale that Tom Young and Clarence Teale was the only ones that I saw do anything out of doors. I believe that I swore that I believed Tom Young and Ed Young was the only ones that done any throwing. I believe that I swore that Tom Young and Clarence Teale was the only ones that I saw take any part in the fight out of doors. Tom Young and Clarence Teale was the only ones of the defendants near Lee or Henry Zornes at the time Mrs. Zornes was hit.

Levi Zornes testified:

When he come one of the Teale boys wanted to bet the other that he could drink more. After this I don't know whether Hugh said anything just then. Then there was some talk about a cook; Hugh made a bow and said something about the cook. Said he was all the cook there was down there. Clarence Teale accused my wife of saying they had Jane Young down there as a cook. I think Teale said he had heard that she was telling around that they had Jane Young down there for a cook. She said that was a mistake; she didn't say so. He used some bad talk. She said Dick Prey said it. I opened the east door and ordered the boys out. Tom Young said I couldn't put him out. He rapped me on the head with a bicycle pump. There wasn't no dents in the bicycle pump at the time. It was straight and in good condition. He struck me the second time. I fell kind of in the kitchen door. The first time he struck me I was standing in the southeast room, south of the stove. After I was knocked down the second time I tried to get the

shotgun; before I got my hands on the gun Henry came out over me into the kitchen door. When we got up in the kitchen I think I was ahead of Henry. When we started out of the southwest room Tom Young was following us. After I got out of the southwest door I saw Hugh Teale. We tried to pick up some rocks. Hugh had an arm load of wood, and had his revolver, and said he would shoot our brains out if we picked up rocks. Hugh Teale was standing east and south of the door about eight feet. He had the wood in his left arm. Then we went off southwest. They were pushing us, and we didn't have any time to get any wood at the woodpile. They drove us then north of the woodpile about fifty or sixty feet near the barn and corn crib. Question. After you had been driven there did you see any one that wasn't pursuing you? Yes, sir; saw Hugh Teale, Ed Young, Roy Young, and Tom. Then I saw Mrs. Zornes. Henry was behind me I think about ten feet. I saw the two boys, my wife, and Clarence Teale north of the house. Clarence Teale had a board or a stick, or something in his hands, about three feet or three and one-half feet long. I couldn't tell whether it was a stick, club or a board. Clarence Teale struck her with a board, or whatever he struck her with, and knocked her down. I don't know where the boys stood. Soon after she was knocked down Tom Young says, 'Come on. Here they come; knock their G—— d—— brains out.' When Tom Young hollowed that Clarence Teale threw a rock or a stick of wood and hit me in the back and knocked me through the wire fence. He was probably sixty-five feet from me when he hit the woman. After we were knocked through the fence, Hugh and Clarence Teale and Tom and Ed all joined us. We went fifty feet west, and then south and east. They stopped below the barn, and we went on south to the gate in the southwest corner of the yard. After we got to the house we went into the southeast room. We went to see if we could find the gun or razor.

Elzie Zornes testified as follows:

Father then ordered them out of the house. Tom Young knocked him down with the bicycle pump. I never saw but the one lick struck in the house except that Tom Young hit mother with a stove hearth. These were the only licks I

saw struck in the house. When the fight started mother stood up in the archway or back of the archway. When I went into the north room I stood by the foot of the bed southeast of my mother. I stood right close to the bed. She was standing up when he threw the stove hearth at her and struck her on the ankle. He threw the hearth as hard as he could throw it. I never saw her hit with a bicycle pump. I was neither to the side nor in front nor behind my mother. I saw Ed Young grab the shotgun out of my father's hands; this was after father was hit. Question. After Tom Young struck your father you saw Ed Young grab the gun out of your father's hands? Answer. Yes, sir; when my mother, brother and I went out of the house Clarence Teale was the only one in the house. I was behind my mother. After we got to the corner of the house I walked in front of my mother. When I first saw Clarence Teale he was between the well and cave. He run directly to where mother was and struck her with a board or a club.

Henry Zornes testified as follows:

Tom struck me when I was trying to get the shotgun. That was after father had been knocked down. Ed Young got the shotgun and pulled it in my face and said he would shoot my brains out. It was loaded. I put the shells in it. The gun has a safety on it. The second time I was knocked down in the door of the kitchen. Father and I went out of the house; then Tom, Ed and Roy Young was pursuing us. We went to get some rocks. Hugh Teale was there with a revolver and some stove wood. He said if we picked up the rocks he would shoot our brains out. He had it in his pocket when we first went out, and he pulled it in our faces. He didn't throw any wood at us at this time. I went to the woodpile. Hugh gave Tom and Ed Young some wood. My father went with me to the woodpile. I went to get an ax, but they were gone. Tom Phillips and I had chopped wood there about 4 o'clock. They followed us up to some place east of the barn, and they run out of wood. They just stopped throwing long enough to go back and get more wood. During the time they stopped to get the wood I saw Clarence Teale coming from the northwest corner of the house. He had a club or a board. I saw him overtake mother and hit

her over the head with a club or a board. She was facing the south when he struck her. It knocked her down. One of the boys was close to her. And the other one wasn't very far away. I was about forty-seven feet from where she was struck. . . . Hugh Teale told us not to get any rocks. We were probably twelve feet from the southwest door. I never swore on the preliminary trial that I went down to get some wood.

Willie Zornes testified as follows:

The next I saw of Tom he was out when mother was hit. I don't know when he went out. I don't know whether he went out before me or not. I did not swear in the case of the state of Iowa against Clarence Teale that these parties come to our house about half past 9 o'clock. I said half past 8 or 9. I never saw Hugh Teale do anything that night, I don't know whether he said or did anything of any kind or character out of the road that night or not. I don't know how long after Henry had been knocked in the kitchen before Tom Young, Clarence and Hugh Teale went out in the kitchen. I can't give the number of minutes. . . . I heard some remark made about it being a noise like occurred at the supper table. When that was said, I think my mother says, 'Teale, is that you?' Immediately after that Clarence Teale said, 'I didn't know you were in there, Mrs. Zornes; where's Ora?' Then I heard some conversation about her shucking corn up there, and what pay she was getting. Teale said he could give her more money to come down and shuck corn for him. Some one said something about losing their cook down there. Hugh Teale said he was the only cook down there. If there was anything said about the cook, I guess this talk about the cook was after the corn business. Then Clarence Teale spoke up and said there had been a report going around. Mother said she had heard Jane Young got married. Teale then said something about the report there about their cooking down there. Mother said it was a lie, that Dick Prey told it, and that she hadn't started it. Clarence Teale said that Dick Prey or anybody else that said it was a cock-eyed liar. Then, I think, my mother said, 'Put them out.' The bottom window was broken out of the double window. The west bottom window was broken out. There was only one glass in each

sash. The tablecloth was fastened over the window. The windows was broken out the Saturday night before at the dance, when Kirkpatrick and Collins had the fight—the time Allen Ramsey was at our house. I don't know whether they was playing poker out at the barn or not.

It will be noted from the foregoing that only Levi and Henry Zones testified to any conduct on the part of Hugh Teale evincing any hostility whatever towards any one. They were partially corroborated by Tom Phillips. The evidence in contradiction of these witnesses is strongly supported by all the circumstances of the case. According to the defendant's testimony, he never had a revolver. It is undisputed that no revolver was in fact used. That a person, bent on murder and equipped with a revolver in his right hand should want to load his left arm with stove wood presents a weight of improbability, difficult to carry. True, the jury had a right to accept the statements of Zornes in that respect in preference to the other testimony. And yet the duty devolves upon us to examine the entire record and to satisfy ourselves that the judgment of conviction has fair support in the evidence as a whole.

Ignoring the inconsistency of the testimony of Levi and Henry Zornes, as to the revolver, with the undisputed circumstances of the case, and accepting their statements as true, such evidence does not connect the defendant with the assault on Mrs. Zornes, nor does it show any aid or knowledge in that direction. The evidence of the state is direct and definite that Clarence Teale inflicted the blow which killed Mrs. Zornes. It occurred some distance northwest of the house. The defendant was not in that part of the premises. It is undisputed that he knew nothing about such assault, and did not know that Mrs. Zornes had come out of the house, unless the contrary inference can be deduced from the circumstances. We think the circumstances highly corroborate rather than contradict the defendant's denial in this respect.

It is urged by the state in argument that the defendant

aided in bringing about the altercation in the house. The evidence does not at all warrant this contention. His conduct and conversation in the house were kindly and good-natured, and absolutely free from controversy. It is further urged by the state that this defendant and his codefendants "went to the Zornes home for the purpose of making trouble." There is no evidence in the record that has any tendency in that direction. The defendant offered much testimony on the trial to the effect that liquors were sold at this house, and that they were there by invitation, express and implied, and that the place was much frequented. All of this evidence was ruled out upon objection of the state as immaterial. On the theory on which the case was tried, the ruling was proper. There was no claim by the state of conspiracy or of previous plan to provoke a fight. If such had been the claim of the state, then clearly the evidence offered by the defendant would have been proper. In this state of the record it is not available to the state now to advance a theory that the injury was inflicted upon Mrs. Zornes in pursuance of a previous plan. Indeed the district court instructed the jury that the defendant could be held liable only for his own acts. Considerable evidence was introduced on behalf of defendant to the effect that the decedent was a combative and dangerous person who had engaged in many personal encounters. This testimony was in no wise disputed by the state. Testimony was also introduced that at the time of her injury she was assaulting Tom Young with a poker, and that the injury inflicted upon her was done in resistance to such assault. The dispute in the testimony at this point rested solely with the jury, and for the purpose of this appeal she should be deemed blameless. But the guilt of the defendant should not be assumed as a mere matter of inference simply because the fatal blow was inflicted by his brother. It was undisputed that the defendant had always borne a good reputation.

Assuming the Zornes family to be blameless as we do for the purpose of this appeal, it seems very clear that the re-

sponsibility for the trouble rested upon Tom Young and Clarence Teale. Both had imbibed intoxicating liquors before they came, and this accounts for much that would otherwise seem incredible. Both have been convicted, and have been sentenced to long terms of imprisonment. The fact that they were thus guilty should not be allowed to have too great effect in fixing guilt upon others who were present, but were helpless to prevent the altercation. The fight lasted but a few moments. Every one present was in momentary bodily peril because thereof. They were necessarily present. If direct evidence were lacking as to the infliction of the blow which caused the death of Mrs. Zornes, doubtless a larger latitude of inference implicating the persons present would be permissible to the jury. But in view of the direct testimony introduced by the state fixing the direct responsibility upon Clarence Teale, the latitude of mere inference as against others was necessarily reduced accordingly; there being no claim or evidence of a previous conspiracy. It is our conclusion that the evidence is not sufficient to support the verdict of guilty, and that a new trial should be awarded. If additional evidence cannot be procured tending to show participation in the crime by the defendant, the prosecution ought to be dismissed.

II. In view of a possible new trial we should perhaps note certain complaints with reference to the instructions. Instruction No. 22, was as follows:

If you find from the evidence beyond a reasonable doubt that at and within the county of Decatur, and state of Iowa, the defendant, Hugh Teale, and his codefendants, Clarence Teale and Tom Young, or either of them, the *said Hugh Teale being present, aiding, abetting, and consenting thereto,* did on or about the 7th day of December, 1910, unlawfully and without legal excuse, kill Bertha Zornes, without malice, either express or implied, defendant Hugh Teale would be guilty of manslaughter, unless you find that Bertha Zornes was killed by Tom Young in self-defense, as hereinafter set forth in these instructions on that subject.

Particular complaint is directed against the portion of such instruction which we have italicized above. It is urged that this instruction was misleading in that it seemed to affirm or assume that the defendant was by his presence "aiding and abetting." The real meaning intended by the trial judge is quite manifest to us. Giving to the instruction the intended meaning, there could be no objection to it. We are quite convinced, however, that the intended meaning does not stand out clearly to one unacquainted with technical forms of legal expression. The "said Hugh Teale being present, aiding, abetting, and consenting thereto" is an expression which is assertive and affirmative in form rather than hypothetical or subjunctive. This form of expression is suitable to the charge of an indictment. It is accusative. It is not a happy or suitable form in which to submit a question for the finding of a jury thereon. It is calculated to give the impression to the jury that such fact is already determined by the court, and is to be taken as true by them. In this case such impression was emphasized by connecting the presence of the defendant with the "aiding and abetting." The defendant was concededly and indisputably present. Under the evidence in this case, the question whether he aided and abetted was quite separate and distinct from the question of his mere presence upon the premises. It was further emphasized in that the same form of expression appeared in four instructions. On the other hand, instruction 3 charged the jury that the defendant could not be found guilty, unless he "advised, aided, or abetted the other in the commission of the offense charged." Instruction 22 should, of course, be read in connection with instruction 3. We are inclined to the view that instruction 3 was, perhaps, a sufficient cure to the objectionable form of instruction 22. In view of a reversal on the ground stated in the first division hereof, we need not pass definitely upon this point. It is sufficient, for the purpose of the future, to suggest that the form of instruction 22 is objectionable and ought to be avoided.

2. SAME: instruction.

In *State v. Young*, 158 Iowa, 647, we held a similar instruction to be nonprejudicial because the defendant in that case testified that he struck the fatal blow.

As bearing upon the question of prejudice, the defendant, in support of a motion for new trial, filed the affidavits of jurors, showing that eleven jurors did misunderstand the instructions, and did suppose that the question thus stated was predetermined by the court. Some further showing was made in such affidavits as to a finding of facts by the jury to the effect that they found that the defendant had no weapon and took no active part. These affidavits were stricken on the ground that they tended to impeach the verdict. This ruling was proper. *State v. Dudley*, 147 Iowa, 645. If the form of the instruction was appropriate, it could not be assailed by affidavits of jurors. If inappropriate, there was presumptive prejudice.

3. SAME: verdict: impeachment.

Other questions argued need not be further considered. For the reason indicated, the judgment of conviction must be reversed, and the case remanded for further proceedings in harmony herewith.

*Reversed* and *Remanded.*

DEEMER, J. (dissenting).—It should be stated that defendant, with his brother, Clarence Teale, Thomas and Ed Young, went to the Zornes house together, although by reason of some unintentional circumstance defendant was the first one to enter the door. What their mission was, under this record, can only be surmised from their conduct. It is certain that within a short while after the men entered the house, a controversy arose as to who was the author of a report that a certain young woman had been acting as cook for Clarence Teale. Clarence Teale accused Mrs. Zornes of being the author of the story, and she denied it. Defendant participated in this verbal controversy, which became somewhat heated, and remarked that he was the only cook that had been

there since he had been "down on the bottom." Mrs. Zornes then remarked that she had no reference to him; "that she meant Jane Young." Clarence Teale then said there had been considerable talk about Jane Young keeping house for them down there, and "I don't know, but I think it started from this hill." Mrs. Zornes then said it was a lie; that it did not start from there, but that Dick Prey had told it in their house. Clarence Teale then said that whoever stated it was a "cock-eyed liar." Mrs. Zornes then said that he (Clarence) was a liar; that Dick Prey had told it, and she believed him, and after calling Clarence some vile names, she ordered her husband to put all of the men out of the house, telling him to get the gun. The majority opinion sets forth the testimony as to what was done inside of the house. With that affair, defendant, Hugh Teale, had no direct connection, but he, Levi and Henry Zornes went out of the house, and as the Zornes armed themselves with clubs at the woodpile, defendant warned his companions when they appeared at the door not to come out. The defendant's conduct, after that time and in connection with the affray which caused the death of Mrs. Zornes, is shown by this summary of the testimony offered by the state, taken from the abstract and amended abstract now before us. It is a brief statement of the testimony as found in the majority opinion, and also includes some material testimony found in an amended abstract, which is not referred to by the majority. This statement was testified to by Levi Zornes, as to defendant's part in the fight: "After I got out of the southwest door I saw Hugh Teale. We tried to pick up some rocks. Hugh had an arm load of wood and had his revolver, and said he would shoot our brains out if we picked up rocks. Hugh Teale was standing east and south of the door about eight feet. He had the wood in his left arm. Then we went off southwest. They were pushing us, and we didn't have any time to get any wood at the woodpile. They drove us then north of the woodpile about fifty or sixty feet near the barn and corn crib. Q. After you had been

driven there, did you see any one that was pursuing you? A. Yes, sir; saw Hugh Teale, Ed Young, Roy Young and Tom.''

Henry Zornes gave this version of the matter: ''Father and I went out of the house, then Tom, Ed and Roy Young was pursuing us. We went to get some rocks. Hugh Teale was there with a revolver and some stove wood. He said if we picked up the rocks he would shoot our brains out. He had it in his pocket when we first went out, and he pulled it in our faces. He didn't throw any wood at us at this time. I went to the woodpile. Hugh gave Tom and Ed Young some wood. . . . My father went to the woodpile with me. We were pursued by Tom Young, Roy, Ed, and Hugh Teale.''

Thomas Phillips also testified to the following facts, in addition to those set out in the majority opinion: ''Clarence Teale came right out of the house behind me. When I got out Hugh Teale was standing there with some wood in one arm; a revolver or something in his hand shined bright—I wouldn't say whether it was a revolver or not.''

This was the case made for the state, omitting some other matters inferentially pointing to guilt, growing out of defendant's conduct, after the assault was committed upon Mrs. Zornes, and the question is, Was it sufficient to take the case to the jury as against the defendant, Hugh Teale? The jury had the right to believe it as against any testimony on the part of the defendant, and if it did believe it and gave it credence, it is for us to say whether or not such testimony was sufficient to justify the verdict. It is not our province, as I understand it, to weigh the whole testimony, even in cases where there is a sharp conflict, and say, upon the whole record, that were we triers of the fact, we would not have found the defendant guilty. Our province is to ascertain whether or not there was sufficient testimony introduced which, if believed by the jury, would justify a conviction. One reason for this is that questions of fact in all criminal cases are for a jury, and, after a verdict of guilty, found by

twelve men, has been returned, and the trial judge has reviewed the testimony and confirmed the verdict, we are not, as an appellate tribunal, justified in reversing for want of testimony, because, forsooth, in reviewing the evidence as presented by the cold-printed page, we would not have come to the same conclusion. The usual test, as I understand it, is this: Suppose the defendant had rested without any testimony, and had chosen to submit his case upon the evidence adduced by the state; the inquiry then, in the event of a verdict of guilty, would have been, Was there enough to justify the verdict? The same rule obtains where the defendant offers testimony in his defense; for it is within the province of the jury to say, "We do not believe any of the testimony offered by the defendant, or any material part of it." Again, the trial court sits in review of the entire proceedings, and the presiding judge has opportunities which we do not and cannot possess, and he, under his oath, has a definite function to perform. In refusing to grant a motion for a new trial, he also puts his seal of approval upon the verdict, and his finding that the testimony is sufficient should not be disregarded except in extreme cases. This to my mind is not such a case.

The testimony shows much more than the mere presence of defendant as acquiescent observer. He could easily have retired to a safe distance, had he been so disposed. But he did not do so; he remained on the scene, drew his revolver, tried to prevent the Zornes from arming themselves with clubs, told the Zornes that if they picked up rocks he would blow their brains out and afterwards gave Tom and Ed Young some wood. Not only this, but when the Zornes started to retire, he, with Ed and Roy and Tom Young, pursued the Zornes, he (Hugh) being at the time armed and carrying some wood in another arm. Of course he did not know that Mrs. Zornes was then being actually assaulted with intent to kill, but he was engaged and participated in the unlawful assault on the Zornes on their own premises, and, being en-

gaged in this general unlawful mêlée, it is immaterial that he did not give direct countenance to everything that actually occurred. This proposition of law is too fundamental to require citation of authorities in its support. Mere presence at the place of difficulty is not aiding and abetting. But if one being present, encourages or incites, by words, gestures, looks, or signs, or in any manner, or by any means countenances or approves an assault or other crime, or is an active participant in a general riot or assault, he is an aider and abettor. *Hilmes v. Stroebel*, 59 Wis. 74 (17 N. W. 539); *State v. Tally*, 102 Ala. 25 (15 South. 722); *Rhinehart v. Whitehead*, 64 Wis. 42 (24 N. W. 401); *State v. Jones*, 115 Iowa, 113; *Brown v. Perkins*, 83 Mass. (1 Allen) 89; *Kuney v. Dutcher*, 56 Mich. 308 (22 N. W. 866); *State v. Cox*, 65 Mo. 29; *State v. Walker*, 98 Mo. 95 (9 S. W. 646, 11 S. W. 1133). In the latter case, it is said: "One theory of the case on the part of the state was that defendant did not himself shoot Green, but that one or more of seven named persons did, and that defendant was present, aiding and abetting. Wharton, in describing and defining an aider and abettor, says: 'If he watched for his companions in order to prevent surprise, or remained at a convenient distance in order to favor their escape, if necessary, or was in such a situation as to be able readily to come to their assistance, the knowledge of which was calculated to give additional confidence to his companions, in contemplation of law he was aiding and abetting.' I Wharton Criminal Law (8th Ed.) 211."

There was ample testimony, as I view it, to take the case to the jury. Moreover, it was for the jury to say, under all the facts and circumstances disclosed by the record, what the purpose of the defendant and his companions was in going to the Zornes house. Very shortly after they arrived there, Mrs. Zornes was accused of starting reports as against Clarence Teale. Hugh Teale, the defendant, was conveniently there as a witness to deny the correctness of the report. Out of this grew the difficulty. A jury may have found, in the

absence of other testimony, that the parties all went to the Zornes home to settle this matter of gossip. Either that, or they went there to get liquor, or for some other doubtful motive. They went practically together, and in what followed the defendant, Hugh Teale, was not guiltless, if the witnesses for the state are to be believed. Whether or not they were worthy of credence was essentially for a jury, and I would not interfere with the verdict. I believe the judgment should be Affirmed.

PRESTON, J., concurs in this dissent.