In re Theresa DUPRE, Debtor.

HAEMONETICS CORPORATION, Plaintiff,

v.

Theresa DUPRE, Defendant.

NOVA BIOMEDICAL CORPORATION, Plaintiff,

v.

Theresa DUPRE, Defendant.

Bankruptcy No. 95–18514–WCH.
Adversary Nos. 96–01111, 96–01112.

United States Bankruptcy Court,
D. Massachusetts.

May 22, 1997.

Richard D. Bickelman, Lawrence R. Holland, Deutsch, Williams, Brooks, DeRensis, Holland & Drachman, P.C., Boston, MA, for Plaintiffs.

Peter J. Muse, Charles A. Dale, III, Quincy, MA, Hanify & King P.C., Boston, MA, for Defendant.

## DECISION

WILLIAM C. HILLMAN, Bankruptcy Judge.

### I. Introduction

Theresa Dupre ("Theresa") is the debtor in the principal case. She is the wife of Paul R. Dupre ("Paul") who is not a party to these proceedings.

Plaintiffs, Haemonetics Corporation ("Haemonetics") and Nova Biomedical Corporation ("Nova") (collectively "Plaintiffs") brought civil actions against Paul and Theresa in the Massachusetts courts. Summary judgment was granted against Paul and those judgments are final. The actions against Theresa were stayed when she filed for relief under Chapter 7 on December 18, 1995.

Plaintiffs then commenced these adversary proceedings to obtain money judgments against Theresa and judgment that those sums are not dischargeable in bankruptcy under 11 U.S.C. §§ 523(a)(2)(a) and 523(a)(6).[1] I ordered them consolidated for trial.[2]

This is a core proceeding. 28 U.S.C. § 157(b)(2)(B), (I). The following constitute my findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a), made applicable to these adversary proceedings by Fed. R. Bankr.P. 7052.

### II. Findings of Fact

Theresa married Paul in July, 1988 and has remained married to him since that time. They have two minor children.

She earned a Bachelor of Science degree in Business Administration with a major in Finance from Stonehill College. She received financial assistance during her undergraduate years, based in part on academic merit. Her course work included programs in accounting, investment, management and economics. She also obtained a Master of Science in Computer Information Systems from Bentley College.

Paul does not have any post-secondary degree. He was employed by Nova from July, 1987 to March, 1990, holding a variety of administrative and supervisory posts in the payroll department. He was employed by Haemonetics in similar capacities from March, 1990 to July, 1994.

Theresa has been employed by Analog Devices since 1986. Her present position is as a senior system administrator. Her earnings increased from just over $27,000 to almost $42,000 in 1994. For the 1988–1994 period, the family income from W–2 wages of Theresa and Paul increased from $53,000 to $65,000.

On May 10, 1995, Paul pleaded guilty to fourteen counts of wire fraud, based upon his

---

1. (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

    .    .    .    .    .

    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
      (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

    .    .    .    .    .

    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

2. After the completion of Plaintiffs' case, Theresa moved for a "directed verdict" which I take to be a motion under Fed.R.Civ.P. 52(c), made applicable to these adversary proceedings by Fed. R. Bankr.P. 7052. Theresa did not thereafter present any evidence on her own behalf and so the motion is academic.

embezzlement of $264,104.90 from Nova and $656,274.31 from Haemonetics.

The embezzled funds were deposited in seven accounts in that number of banks. Six of those accounts were in the names of Paul or Theresa; one was in Paul's name alone. In addition, Paul and Theresa maintained accounts with five different securities firms, either as joint tenants or in the name of one of them as custodian for one of their children.

During the time that Paul was engaged in embezzlement, Paul and Theresa had a home computer. It was equipped with the Quicken software program, which both used to maintain their family financial records. Both Theresa and Paul made entries into the Quicken system.

At her meeting of creditors held pursuant to 11 U.S.C. § 341(a) Theresa was specifically asked if she had deleted any programs from the computer. She responded in the negative. In fact, as she testified before me, she had deleted Quicken and two other programs from the computer just prior to the meeting of creditors. She also testified that the purpose of the deletions was to make room in the computer for certain children's programs, but I find as a fact that she deleted Quicken in an attempt to conceal the family financial affairs from her creditors.[3]

I further find that Theresa was aware that her husband was providing funds for the various accounts far in excess of his earnings. I find also that she was aware of the extent to which those cash infusions and of expenditures went beyond their disposable earnings from wages. Without giving all of the particulars upon which I make that finding, I point to the amount of cash in bank accounts overseas; the extent of an investment in a restaurant in Ireland; the amount of cash used to purchase real estate; and the totality of checks which Theresa signed on the accounts into which embezzled funds were deposited and for at least some of which she maintained the check registers. Her testimony that she only wrote checks at Paul's direction is contradicted in many particulars by other facts in the record and is not credible.

The joint income tax return filed by Theresa and Paul for 1992 indicated security trading transactions of $1,500,000 resulting in a total gain of $35,209.41. In the following year trading involved $2,964,786.73 in transactions resulting in a net loss of $175,691.85.

I find as a fact that Theresa was intimately familiar with the *amount* of funds coming into the household in excess of earnings and of the use to which those funds were put. Her attempts to appear unsophisticated in the financial dealings is belied by the detailed nature of her testimony with respect to various transactions, the extent to which she managed or administered those dealings, and her participation in various activities resulting in or from the expenditure of the excess funds, all against a background of her specialized education on the collegiate and masters level.

## III.  Conclusions of Law

The Plaintiffs base their case on two provisions of § 523 of the Bankruptcy Code:

(a) A discharge under section 727 of this title does not discharge an individual debtor from any debt—

\*       \*       \*       \*       \*       \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud . . .;

\*       \*       \*       \*       \*       \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity. . . .

■  The findings of fact demonstrate that there was no contractual relationship between Theresa and the Plaintiffs. For the Plaintiffs to prevail, it is necessary that they established a "debt", within the meaning of the Bankruptcy Code, in some other way.

A "debt" is a "liability on a claim." 11 U.S.C. § 101(12). "Claim" is defined as

---

**3.** Plaintiffs propose that I find the deletion of the computer program was a violation of 11 U.S.C. § 727(a)(3), but such a determination is not rele-

vant to the present proceedings which are brought under 11 U.S.C. § 523.

"a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

11 U.S.C. § 101(5)(A).

■ Paul's conviction of embezzlement unquestionably constitutes actual fraud and conversion. *United States v. Young*, 955 F.2d 99, 102–103 (1st Cir.1992). Were Paul the debtor in this case, the Plaintiffs would have a strong case for nondischargeability against him under either clause of § 523 here relevant. The critical issue is whether, Paul's malfeasance can be attributed to Theresa.

Plaintiffs argue that their claim against Theresa arises from a civil conspiracy in which she participated with Paul to convert or otherwise deprive them of their property and the willful and malicious injury she caused to their property. They ask me to find a civil conspiracy and hence tortious (i.e., willful and malicious) injury by applying to the facts found the principles of *Restatement (Second) of Torts* § 876 (1979):

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.

This probably represents the law of Massachusetts. *See Kyte v. Philip Morris Inc.*, 408 Mass. 162, 166–167, 556 N.E.2d 1025 (1990).

There is not an iota of evidence that Theresa acted in concert with Paul in the act of converting the Plaintiffs' funds. Her liability cannot be based upon § 876(a).

Turning to the latter alternative of the Restatement, I have reviewed the evidence and can find neither direct evidence of Theresa's knowledge of the source of the funds, nor circumstantial evidence from which I could make that determination by a preponderance of the evidence.[4] As a result, I find that she did not know that Paul's conduct constituted a breach of duty. Further, I find no support for the conjunctive element, the giving of substantial assistance or encouragement to Paul to embezzle. Chief Justice Bigelow has stated the test to be applied:

> [A]ny person who is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks, or signs, or who is any way or by any means countenances or approves the same, is in law deemed to be an aider and abetter, and liable as principal.... On the other hand, it is to be borne in mind that mere presence at the commission of a trespass or other wrongful act does not render a person liable as a participator therein.

*Brown v. Perkins*, 83 Mass. 89, 1 Allen 89, 98 (1861).

Lacking a tort the Plaintiffs lack a debt, and hence judgment must enter for the Theresa on the complaint.[5]

Separate orders will issue.

---

4. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

5. It is not necessary for me to reach the nice distinctions concerning the meaning of "willful and malicious" in § 523(a)(6), *See Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 857 (1st Cir.1997), nor the question of whether Theresa "obtained" the funds under § 523(a)(2)(A). *Smith v. Cunningham (In re Cunningham)*, 163 B.R. 657, 660 (Bankr.D.Mass.1994).